**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FELIX ALVAREZ** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FACILITY MANAGER T. FERGUSON,** | : | |
| **MAJOR CLARK, [E] UNIT MANAGER** | : | |
| **MRENEVICH, CHIEF GRIEVANCE** | : | |
| **OFFICER KERRI MOORE,** | : | |
| **Individually and in Their Official** | : | |
| **Capacities, and CO/JOHN DOE** | : | **NO. 20-2577** |

**MEMORANDUM**

Savage, J.                                                              February 9, 2021

Felix Alvarez, a state prisoner proceeding *pro se*, brings this action pursuant to 42 U.S.C. §1983 against Department of Corrections employees Facility Manager T. Ferguson, Major Clark, [E] Unit Manager Mrenevich, Chief Grievance Officer Kerri Moore, and Correctional Officer John Doe, in their individual and official capacities.  He seeks leave to proceed *in forma pauperis*.  Because it appears that Alvarez is not capable of paying the fees to commence this action, we shall grant him leave to proceed *in forma pauperis*.

After reviewing the Complaint liberally, we shall dismiss it as to Facility Manager T. Ferguson, Major Clark, and Chief Grievance Officer Kerri Moore, and dismiss the claims against Unit Manager Mrenevich and CO/John Doe in their official capacities only. The claims against Mrenevich and Doe in their individual capacities will remain.

*Factual Allegations*

Alvarez's claims arise while he was an inmate at SCI-Phoenix.[1] He asserts that he has several "serious Mental Health disabilities" and is a "handicap[ped] inmate" with serious medical conditions consisting of a "fractured [p]elvis with two screws in [his] left leg," which makes his "left leg shorter and weaker than [his] right leg".[2]  He avers that he has had multiple surgeries, and the "medical department" for the Pennsylvania Department of Corrections had authorized him "to walk with a cane".[3]

The facts as alleged in the complaint and its attachments, which we accept as true and from which we draw all inferences in favor of Alvarez, follow.

Before his transfer to SCI-Phoenix, Alvarez had been incarcerated at SCI-Camp Hill and SCI-Benner where he "received bottom bunk, bottom tier status" because of his disability.[4]  When he arrived at SCI-Phoenix on October 24, 2019, Alvarez was assigned a "top tier, top bunk" by E Unit Manager Mrenevich ("Mrenevich") and Correctional Officer John Doe, an E Unit block officer ("Doe").[5]  Alvarez, with his cane in hand, explained his handicap conditions to both Mrenevich and Doe, and **"**informed [Mrenevich] of [his] bottom bunk status and that [he] needed to be moved down stairs".[6]  Mrenevich informed

---

[1] 42 U.S.C. Section 1983 Civil Complaint ("Compl.") at 12-14 (Doc. No. 2).  We adopt the pagination assigned to the Complaint by the Court's CM/ECF system.

[2] *Id.* at 13.

[3] *Id.*

[4]  Dept. of Corrections Official Inmate Grievance ("Grievance"), Compl. Ex. A at 20.

[5] Compl. at 14.

[6]  Grievance at 20.

Alvarez that "he would have to wait" and "they both refused to move [Alvarez] to a bottom tier and bottom bunk."[7]   Later that day, Alvarez attempted to climb to the top bunk. Because of his disability, his leg and pelvis "could not hold his body weight making the entire lower portion of his body go limp and immediately he fell smashing his head on the cell table."[8]   When Alvarez tried to get up, he felt pain and was dizzy.   He fell again, banging his head on the ladder attached to the bunk.[9]   Alvarez was taken by wheelchair to the infirmary where he was "kept overnight with a concussion and noticeable head and leg injuries."[10]

The following day, Alvarez woke up in the infirmary with blurred vision, head pain, dizziness, and lumps on his head.[11]   He had pain in his legs and pelvis and was prescribed medication.[12]   He was released from the infirmary later that day.   When he returned to E unit, Alvarez "again informed" Mrenevich about what had happened and repeated his request to "mov[e] to [a] bottom tier and a bottom bunk cell[.]""   Mrenevich again told him that he would have to wait.[13]

---

[7] Compl. at 14.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

Alvarez filed a grievance that day complaining that Mrenevich was deliberately indifferent when he assigned Alvarez to a top tier cell and a top bunk despite his complaints to him and Doe about his disability.[14]  Alvarez further alleges that Mrenevich informed him he had to stay in the "same top tier top bunk cell" even after he was injured trying to climb up to the top bunk.[15]

On October 31, 2019, Major Clark denied the grievance.  He found that Mrenevich "was not ignoring or indifferent to [Alvarez's] issue" because when Mrenevich "looked in the system that [they] utilize, [Alvarez was] not listed as "bottom bunk."[16]  Alvarez appealed on November 8, 2019.[17] Facility Manager T. Ferguson denied the appeal on December 6, 2019.[18]  On January 26, 2020, Alvarez filed a Final Appeal Grievance[19] "to the Chief Grievance officer Kerri Moore".[20]   On March 6, 2020, Moore dismissed the appeal because it "was not submitted within fifteen (15) working days after the events upon which claims are based."[21]

---

[14] *Id.* at 15.

[15] *Id.*

[16] Initial Review Response, Compl. Ex. B at 22.

[17] Appeal to Superintendent, Compl. Ex. C at 24.

[18] Facility Manager's Appeal Response, Compl. Ex. D at 26.

[19] Final Appeal Grievance # 831570, Compl. Ex. E at 28.

[20] Compl. at 15.

[21] Final Appeal Decision Dismissal, Compl. Ex. F at 30.

Alvarez asserts that Mrenevich and CO Doe knew about his "serious medical handicap[] conditions but [deliberately] placed [him] in a top tier cell top bunk which resulted" in his injuries and "even after [his] injuries again [deliberately] placed [Alvarez] back on the top tier cell top [bunk]"[22] and that their deliberate indifference caused him **"pain, suffering, physical injury and continuing emotional distress."[23]** Alvarez contends that Clark and Ferguson deliberately denied him "redress under the 1st and 14th [A]mendment[s] to the United States Constitution by rendering [an erroneous] grievance respon[se] rationale."[24] Alvarez contends that Moore deliberately denied him "a redress under the 1st, 6th, and 14th [A]mendment[s] to the United States [C]onstitution by dismissing [his] final appeal for not submitting the appeal within fifteen (15) working days . . . ."[25]

Alvarez seeks "compensatory and punitive damages in the amount of $125,000 against each defendant[]", jointly and severally.[26]

### Standard Of Review

In determining whether a complaint fails to state a claim under § 1915(e), a court applies the same standard applicable to motions to dismiss under Federal Rule of Civil

---

[22] Compl. at 16.

[23] *Id.* at 17.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

Procedure 12(b)(6).  *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  The complaint must contain sufficient facts which, accepted as true, show that the plaintiff is entitled to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice.  *Id.*  As Alvarez is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## *Discussion*

To establish a claim under section 1983, a plaintiff must allege facts, which if proven, establish: (1) the deprivation of a right secured by the Constitution or the laws of the United States; and (2) the person depriving plaintiff of the right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (citation omitted).

## *Official Capacity Claims*

The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Because suits against state officials acting in their official capacities are actually suits against the employing government agency, they are barred by the Eleventh Amendment.[27]  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

---

[27] State officials sued in their individual capacities are "persons" within the meaning of Section 1983.  *See Hafer*, 502 U.S. at 31.  Thus, the Eleventh Amendment does not bar suits for monetary damages brought under Section 1983 against state officials in their individual capacities.  *Id.*

The Pennsylvania Department of Corrections is a part of the executive branch of the Commonwealth of Pennsylvania. Its employees share in the Commonwealth's Eleventh Amendment immunity when they are sued in their official capacities. *See Will*, 491 U.S. at 71; *see also Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). Because the Commonwealth has not waived its Eleventh Amendment immunity, [28] Commonwealth officials sued in their official capacities are immune from suit. Therefore, we shall dismiss Alvarez's damages claims against the individual defendants in their official capacities.

### *Grievances*

Alvarez alleges that Facility Manager T. Ferguson rejected his grievance, and Major Clark and Chief Grievance Officer Kerri Moore rejected his appeals. Alvarez does not allege that they played any role in or knew of his bunk and tier status that allegedly led to his fall.

To maintain an action against a government actor in his individual capacity, the plaintiff must establish that the defendant was personally involved in the wrongdoing. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). He must demonstrate that the defendant either personally directed or actually knew and acquiesced in the wrongful conduct. *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

---

[28] *See* 42 Pa. Cons. Stat. § 8521-22.

A prison official's participation in the grievance process does not expose him to individual liability for the conduct underlying the prisoner's grievance. Participation in a review of the grievance does not establish personal involvement establishing § 1983 liability. *Collins v. Williams,* 575 F. Supp. 2d 610, 615 (D. Del. 2008) (citing cases).

If Alvarez is claiming his due process rights were violated because his grievances were ignored, his claim is without merit. Prisoners do not have a constitutional right to a grievance procedure. Nor does a state-established grievance process create a liberty interest protected under the Fourteenth Amendment. *See Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011) (citations omitted); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Furthermore, "administrative review of prison disciplinary hearings is not constitutionally guaranteed." *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983). Therefore, a prisoner's due process rights are not violated when prison officials fail to respond to or reject his grievances. *Booth v. King*, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004); *see also Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (stating that "a state statute or regulation conferring a right is not alone enough to trigger due process").

Alvarez's claims that Clark, Ferguson, and Moore violated his rights with respect to the denial of his grievance and subsequent appeals do not give rise to a constitutional claim. Therefore, we shall dismiss Alvarez's claims against Major Clark, Facility Manager T. Ferguson, and Chief Grievance Officer Kerri Moore.

### *Individual Claims Against Defendants Mrenevich and Doe*

Alvarez asserts that Mrenevich and Doe knew about his "serious medical handicap[] conditions but [deliberately] placed [him] in a top tier cell top bunk which

resulted" in his injuries and "even after [Alvarez's] injuries again [deliberately] placed [him] back on the top tier cell top [bunk]."[29]

The Eighth Amendment protection against cruel and unusual punishment extends to the prisoner's right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Failure to provide adequate medical care violates a prisoner's right to be free from cruel and unusual punishment when it results from "deliberate indifference to a prisoner's serious illness or injury." *Id.* at 104-05.

To state an Eighth Amendment claim arising out of the failure to treat his medical condition, Alvarez must plead sufficient facts that, if proven, would establish two elements: (1) he had a serious medical need; and (2) prison officials were deliberately indifferent to that need. *Spruill v. Gillis*, 372 F.3d 218, 235-36 (3d Cir. 2004).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). A medical condition is serious when the denial or delay of medical treatment causes unnecessary or wanton infliction of pain. *Id.* at 347.

A failure to treat a serious medical need alone does not give rise to an Eighth Amendment violation. The state actor must be deliberately indifferent for § 1983 liability to attach.

---

[29] Compl. at 16.

Deliberate indifference to a serious medical need is shown when: (1) a doctor intentionally inflicts pain on a prisoner; (2) a prison official denies reasonable requests for medical treatment, exposing the inmate to undue suffering or the threat of tangible residual injury; or (3) a doctor or an official intentionally refuses to provide care even though he is aware of the need for such care.  *Spruill*, 372 F.3d at 235.  A prison official is deliberately indifferent if he disregards a known excessive risk to the inmate's health and safety.  It is not enough that the official is aware of facts from which an inference can be drawn that the inmate is exposed to a substantial risk of serious harm.  The official must actually draw that inference.  *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

Construing Alvarez's allegations liberally and accepting them as true, we find that Alvarez has set forth a plausible claim for relief against Mrenevich and Doe for denying him a bottom bunk and bottom tier in light of his medical condition.  He has alleged facts showing that Mrenevich and Doe were deliberately indifferent when they refused to assign him to a bottom bunk despite knowing that he had a disabling condition and had been assigned to a bottom bunk on a bottom tier at other DOC institutions.

## Conclusion

Because Alvarez has not stated any cognizable claims against defendants Major Clark and Officer Kerri Moore, the claims against them will be dismissed with prejudice. The claims against  Unit Manager Mrenevich and Correctional Officer John Doe in their official capacities will be dismissed with prejudice, and the claims against them in their individual capacities may proceed.